UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

EDWARD PAIXAO,  :  07 CV 5341 (ARR)

           Petitioner,  :  NOT FOR ELECTRONIC
   : OR PRINT
-against-  :  PUBLICATION

WILLIAM BROWN,  :  OPINION
Superintendent, Eastern Correctional Facility,  :  AND ORDER

           Respondent.  :

------------------------------------------------------------------ X

ROSS, United States District Judge:

Edward Paixao, represented by counsel, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 21, 2007. Following a jury trial in New York State Supreme Court, Queens County, the petitioner was convicted of Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree and sentenced to concurrent terms of imprisonment of twenty-two years to life and ten years. The petitioner argues that the State failed to disclose favorable evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963,) and that the state court improperly dismissed his motion to vacate the judgment without examining the factual basis for his Brady claim. For the reasons set forth below, the court denies the petition.

## BACKGROUND

The petitioner was convicted of killing John McDonnell on July 9, 1999 near the Third Rail Tavern in Flushing, New York. Prior to trial, defense counsel, Robert E. Green, submitted a

1

general request for Brady material. Ex. N to Pet. (Ex. A to § 440 Mot., at 4).[1] In response, the prosecution responded that the "People are not now in possession of, or aware of, any Brady Material." Ex. B to § 440 Mot., at 4.

Green then reiterated his request for Brady material in a pretrial motion, see Ex. C to 440 Mot., at 2-3, and filed an affirmation containing more detailed information about the Brady request. Ex. D to 440 Mot. In this affirmation, Green asserted on "information and belief" that there had been "a long period of surveillance" of the Third Rail Tavern by law enforcement officers, including tape recordings of "hundreds of hours" of telephone conversations and "electronic and vidio [sic] surveillance" of customers at the bar. Id. at 7.[2] Green also asserted that these alleged tape recordings may have suggested that one of the State's chief witnesses had been part of a "conspiracy to kill" the petitioner. Id. at 8. In response, the prosecution stated that the "People are ever cognizant of their obligation" under Brady and its progeny, and that if "such information becomes known to the People, same will be disclosed at the proper time prior to trial." Ex. E to 440 Mot., at 4.

Green stated in a later affirmation that as a "follow-up to this request," he called the Assistant District Attorney prosecuting the petitioner's case, Lynn Pomodore, on November 2, 2000 and "asked her to make known any threats made against Mr. Paixao or his daughter that had

---

[1] Exhibit N to the instant petition contains the petitioner's motion to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10, including the exhibits annexed to those motion papers. Those exhibits are hereinafter referred to as Ex. ___ to § 440 Mot.

[2] Green acknowledged in a later affirmation that these allegations of ongoing police surveillance of the Third Rail Tavern were based solely on conversations he had with the petitioner and that he had "no documentary or written evidence to provide additional support for them." Ex. G. to § 440 Mot., ¶ 3.

been overheard by law enforcement agents by electronic surveillance or by any other means." Ex. G to § 440 Mot., ¶ 5. Green stated that Pomodore "replied that the surveillance was intended to produce evidence of drug sales, not the homicide, and that she might or might not look into the results of the surveillance." Id. This understanding of the conversation is also reflected in Green's handwritten notes. Ex H to § 440 Mot. Green was not provided with any Brady material while he represented the petitioner. Ex. G to § 440 Mot., ¶ 5.

The petitioner was represented by different defense counsel at trial, Ronald Rubinstein. Rubinstein again sought the results of this alleged surveillance, requesting an order for "subpoenas regarding an NYPD undercover operation at the Third Rail Tavern." Ex. K to § 440 Mot. The prosecution dismissed this request as "nothing more than a fishing expedition," and no Brady material was supplied in response. Ex. M to § 440 Mot., at 3.

The trial testimony from two of the witnesses is relevant to the instant petition. The owner of the Third Rail Tavern, Charles Hayes, testified that he had witnessed the petitioner shoot McDonnell and that he had spoken with the petitioner following the shooting. See Tr. 999-1005. Scott Andreacchi, a Sergeant with the New York City Police Department who was then assigned to the Internal Affairs Bureau, testified that he had been in the area in an unmarked car with the intention of dropping off two officers at the Third Rail Tavern in connection with an Internal Affairs investigation. See Tr. 631-635, 660.

Following trial, the petitioner was convicted of Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree. The Appellate Division, Second Department affirmed the petitioner's conviction on November 28, 2005. Ex. C to Pet. The Court of Appeals denied his application for leave to appeal on February 27, 2006. Ex. E to Pet.

The petitioner then filed a motion to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10 on January 4, 2007. Ex. N to Pet. In that motion, the petitioner argued that the Third Rail Tavern had been a "key location" for a narcotics organization known as the "New Westies," and that this bar "had been a center of illegal activity and the subject of intensive police surveillance for years." Id. ¶¶ 3-4. Numerous members of this organization were arrested in 1996 following an investigation which included wiretapping and other surveillance of the bar, which then had a different name. Id. ¶ 4. "On information and belief," the petitioner argued that "intense surveillance at the bar continued after the 1996 arrests and remained extant at the time of McDonnell's homicide." Id. ¶ 5. The petitioner argued that the results of this alleged surveillance might have yielded Brady material in the form of evidence that could be used to impeach Hayes and evidence that would have suggested that other people had motives to kill McDonnell. Id. ¶ 8.

After considering the evidence in support of the petitioner's theory of a Brady violation, the Supreme Court denied the motion on May 25, 2007 without holding an evidentiary hearing. Ex. H to Pet. Specifically, the court concluded that the petitioner had "failed to submit sworn factual allegations that substantiate, or tend to substantiate, his claim that undisclosed *Brady* material exists." Id. at 8.

The Appellate Division denied leave to appeal on August 8, 2007, Ex. I to Pet., and the petitioner filed the instant petition on December 21, 2007.

### DISCUSSION

The petitioner argues that he is entitled to habeas relief because the State failed to fulfill its Brady obligations and the state court's denial of his § 440 motion without holding an

evidentiary hearing was based upon an unreasonable determination of the facts and an unreasonable application of clearly established federal law.

## A. AEDPA Standard of Review

The state court's determination that the petitioner had failed to present sufficient evidence of a Brady violation constitutes an adjudication on the merits that is entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a federal habeas court must defer to a state court's adjudication of a petitioner's claim on its merits, unless the adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). See Price v. Vincent, 538 U.S. 634 (2003); Williams v. Taylor, 529 U.S. 362 (2000). "In order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . [it] must have been 'objectively unreasonable.'" Wiggins v. Smith, 539 U.S. 510, 521 (2003). An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001). In addition, any determinations of factual issues made by a state court "shall be presumed to be correct," and the petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). See Schriro v. Landrigan, 550 U.S. 465, 127 S.Ct. 1933, 1939-40 (2007).

## B. The Petitioner's *Brady* Claim

The state had an obligation under Brady to turn over any favorable evidence to the

5

petitioner, 373 U.S. at 87, and the prosecutor had a "duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." Kyles v. Whitley, 514 U.S. 419, 437 (1995). However, this obligation does not mean that a habeas petitioner is entitled to an evidentiary hearing to explore what other information the police may have uncovered in other investigations simply based on the petitioner's suspicion that favorable information might exist. The "mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief," Mallet v. Miller, 432 F.Supp.2d 366, 377 (S.D.N.Y. 2006). Indeed, to establish a Brady violation, a petitioner "must initially establish that the evidence sought, in fact, existed." Graham v. Ricks, No. 02-CV-0303, 2004 WL 468579, at *5 (N.D.N.Y. April 7, 2004). The petitioner in this case has not provided any evidence beyond mere speculation that police surveillance of the Third Rail Tavern continued past 1996, let alone any indication that this hypothetical surveillance unearthed exculpatory evidence.

The petitioner points to several pieces of evidence to support his suspicion that a Brady violation may have occurred. He first cites a conversation between one of the petitioner's initial attorneys, Robert E. Green, and Assistant District Attorney Lynn Pomodore. Pet. at 9-10. Green stated in an affirmation filed in support of the petitioner's § 440 motion that he called Pomodore on November 2, 2000 and "asked her to make known any threats made against Mr. Paixao or his daughter that had been overheard by law enforcement agents by electronic surveillance or by any other means." Ex. G to § 440 Mot., ¶ 5. Green stated that Pomodore "replied that the surveillance was intended to produce evidence of drug sales, not the homicide, and that she might or might not look into the results of the surveillance." Id. This understanding of the conversation is also reflected in Green's handwritten notes. Ex H to § 440 Mot. Before denying

the petitioner's § 440 motion, however, the state court evaluated this evidence and concluded that it did not support the contention that surveillance continued past 1996. Ex. H to Pet., at 7. The petitioner has not presented sufficient evidence to rebut this reasonable interpretation of Green's conversation with Pomodore.³

The petitioner also argues that the State's failure to specifically rebut the allegations made in Green's affirmation constitutes a concession of these allegations. Pet. at 40-42. Specifically, the petitioner faults the State for failing to "provide sworn allegations by a prosecutor or police officer with first-hand knowledge that there was no electronic surveillance on the bar after the 1996 drug arrests," id. at 41, although the petitioner admits that the state did deny having any undisclosed Brady material after Green made his initial request. Id. at 42. The petitioner argues that the State has "conceded the accuracy" of the allegations that undisclosed Brady material exists. See id. at 40-41 (citing People v. Ciaccio, 47 N.Y.2d 431, 436-38 (1979); People v. Gruden, 42 N.Y2d 214, 215-16 (1977); Culbreath v. Bennett, No. 01-CV-6337, 2004 WL 1811394, at *25 (W.D.N.Y. Aug. 11, 2004); see also Pet'r's Reply at 5-6 (citing Cristini v. McKee, 526 F.3d 888, 984 n. 1 (6th Cir. 2008); Bland v. California Dep't of Corr., 20 F.3d 1469, 1474 (9th Cir. 1994), cert. denied 513 U.S. 947 (1994)).

However, the cited cases merely support the uncontroversial proposition that when a

---

³The petitioner submitted another affirmation from Green, prepared in connection with this habeas petition. Ex J to Pet. This affirmation largely repeated the factual assertions included in Green's earlier affirmation, although Green elaborated on his understanding of this conversation, stating that there was "no doubt" in his mind he was asking Pomodore "about surveillance in the months immediately preceding the crime, not about surveillance three to four years prior to the crime." Id. ¶ 8. He further stated that he was "sure that Ms. Pomodore understood this to be the time frame to which [he] was referring." Id. This additional information is insufficient to set aside the state court's factual finding that Green's conversation with Pomodore did not provide evidence to support the petitioner's theory of a Brady violation.

party chooses to oppose a motion based on one set of grounds, that party normally waives his right to oppose the motion on other grounds. In each of these cited cases, the factual allegations contained within the respective motion papers were sufficient to establish the party's claim, meaning that the opposing party's failure to counter the factual allegations warranted granting the motion. In Ciaccio, for example, the court granted a defendant's motion to set aside the verdict based on sworn affidavits from two jurors who said that the court clerk had improperly pressured the jury to continue deliberating. 47 N.Y.2d at 436. Since the District Attorney's opposition to the motion was based exclusively on the argument that the facts did not warrant vacating the verdict, and because the court disagreed and found that the facts *did* warrant vacating the verdict, the court held that the motion should be granted without holding a hearing to determine whether the facts alleged in the two jurors' affidavits were accurate. Id. at 438.

In this case, the State made a similar strategic decision, responding to the petitioner's § 440 motion by pointing out that the petitioner had failed to meet "his burden in the first instance to support his claims with sworn allegations of fact," Ex. F to Pet., ¶ 12 (citing N.Y. Crim. Proc. Law § 440.30(1); People v. Brown, 56 N.Y.2d 242, 247 (1982))[4], rather than supplying the court with a competing factual declaration. However, this does not automatically mean that the state conceded the petitioner's theory of a potential Brady violation. Rather, the State argued that the court could not reasonably conclude that a Brady violation had occurred from the meager evidence marshaled in support of the petitioner's § 440 motion. Although the State did not contest the facts contained within that evidence, such as the fact of the telephone conversation as

---

[4]N.Y. Crim. Proc. Law § 440.30(1) requires that if a motion "is based upon the existence or occurrence of facts, the motion papers must contain sworn allegations thereof."

described in Green's affirmation, it did contest the petitioner's attempt to extrapolate from those facts the theory that a <u>Brady</u> violation had occurred. The State is not required to produce sworn declarations rebutting every fact alleged in a § 440 motion or a habeas petition. Its decision to contest the petitioner's allegations on more general grounds does not mean that his habeas petition should be granted.

The petitioner also argues that the Third Rail Tavern remained a "center of activity for New Westies ringleaders" during the time when McDonnell was shot, and that Hayes was involved with the illegal organization, suggesting that surveillance tapes of the bar would likely have contained evidence that could be used to impeach Hayes or identify other people that may have had a motive to kill McDonnell. Pet. at 44-46. None of this supports the petitioner's contention that any such surveillance tapes actually existed, however. He also points out that Internal Affairs officers were on their way to the bar when McDonnell was killed, <u>id.</u> at 45, arguing that this was "clear proof of ongoing surveillance," but that fact does not support the inference that undisclosed surveillance tapes exist. The state court reasonably concluded that there was no evidence suggesting that the investigation by the Internal Affairs department extended to civilians or yielded any <u>Brady</u> material.

The petitioner also argues that the facts of another habeas case support its contention that a <u>Brady</u> violation has occurred in this case. That case, <u>Vitiello v. Senkowski</u>, No. 03-CV-1410, involved the petitioner's conviction for the attempted murder of John McDonnell, the victim that the petitioner in the instant case was convicted of actually murdering. The Assistant District Attorney responsible for investigating an attempted homicide against McDonnell admitted that he had been unaware of an ongoing investigation into McDonnell's alleged drug dealing, and the

Assistant District Attorney responsible for the narcotics investigation admitted that he was unaware that McDonnell was a victim and witness in the other case. Ex. W to § 440 Mot., ¶ 14. This court granted the petitioner's request for leave to conduct discovery in connection with his claims that a <u>Brady</u> violation had been committed by the Queens County District Attorney's Office. See Exs. Q, R to § 440 Mot. After discovery and a hearing before Magistrate Judge Azrack, see Exs. S, T. to § 440 Mot., that case was ultimately resolved by an order conditionally granting the petition upon the consent and stipulation of the parties. Ex. V to § 440 Mot.

The petitioner in this case argues that "<u>Brady</u> failures in the <u>Vitiello</u> case strongly suggest that similar, and possibly intentional, failures occurred in this one." Pet'r's Reply at 14. The petitioner also contends that the <u>Vitiello</u> case "demonstrates the State's unwillingness to disclose information" about its investigation into the "New Westies" organization. <u>Id.</u> at 15. Despite the petitioner's suspicions and the factual similarities between the two cases, however, nothing about the <u>Vitiello</u> case supports the petitioner's theory that a <u>Brady</u> violation occurred in this case.

The state court's denial of the petitioner's § 440 motion based on the petitioner's failure to adduce evidence that could "substantiate, or tend to substantiate, his claim that undisclosed *Brady* material exists," Ex. H to Pet., at 8, was not an unreasonable application of the law or determination of the facts. The petition must be denied.

The petitioner's request for an evidentiary hearing is also denied. Although where a petitioner has made "specific allegations" indicating that he may be able to demonstrate that he is entitled to habeas relief, the court should provide him the opportunity to develop the factual record, <u>Drake v. Portuondo</u>, 321 F.3d 338, 345 (2d. Cir. 2003) (quoting <u>Bracy v. Gramley</u>, 520 U.S. 899, 908 (1997)), the petitioner has not made such a showing in this case. This court is not

10

required to grant a habeas petitioner a hearing in order to provide an opportunity "to develop the most insubstantial factual allegations." Schriro, 127 S.Ct. at 1940 (district court may deny request for a hearing when a petitioner cannot demonstrate that such a hearing would allow him to develop a factual record entitling him to habeas relief). Although the state court did not grant the petitioner's discovery requests or hold an evidentiary hearing, it considered the factual allegations and concluded that the petitioner had not "presented sworn allegations of fact that tend to substantiate his contention that electronic surveillance continued at the bar in 1999" or that this alleged surveillance might contain any Brady material. Ex. H to Pet. at 7. Unlike in Drake, where the state court "summarily denied" the petitioner's claim without developing the factual record, the state court in this case evaluated the petitioner's factual allegations and reasonably concluded that they did not support his Brady claim. Under AEDPA, this court must defer to that determination absent "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1). The petitioner has not overcome that hurdle in this case.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of the petitioner's claims, since the petitioner failed to make a substantial showing of any denial of her constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

SO ORDERED.

                                                   s/ ARR
                                         _____
                                         Allyne R. Ross
                                         United States District Judge

Dated:        February 17, 2009
                Brooklyn, New York

SERVICE LIST:

<u>Attorney for Petitioner</u>
Jonathan M. Kratter
Appellate Advocates
2 Rector Street - 10th Floor
New York, NY 10006

<u>Attorney for Respondent</u>
Jennifer Hagan
Queens District Attorney's Office
125-01 Queens Blvd
Kew Gardens, NY 11415